IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN A. FINCK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant.<br>_____/ | No.  CIV.S-04-0116 DAD<br><br><br><br>ORDER |

　　　　This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.  For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

**PROCEDURAL BACKGROUND**

　　　　Plaintiff Kathryn Ann Finck applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act").  (Transcript (Tr.) at

1

78-80, 322-24.) The Commissioner denied plaintiff's applications initially and on reconsideration. (Tr. at 65-68, 72-76, 325-28, 331-35.)[1] Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on April 9, 2003, at which time plaintiff was represented by counsel. (Tr. at 30-62.) In a decision issued on May 16, 2003, the ALJ determined that plaintiff was not disabled. (Tr. at 10-24.) The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b). She has been diagnosed with fibromyalgia, a myofascial pain syndrome, De Quervain's tendonitis, nocturnal clonus, a pain disorder associated with both psychological

---

[1] In the motion filed on plaintiff's behalf, counsel makes reference to a sentence in the Commissioner's reconsideration notice advising, in relevant part: "We have decided that you are able to stand, walk and sit about 6 hours in an 8-hour workday ...." (Tr. at 72, 331.) Counsel reads this language as an admission by the Commissioner that plaintiff is able to work only 6 hours and therefore unable to work a full workday. Counsel misreads the reconsideration notice. As defendant persuasively points out, the notice might more accurately advise that plaintiff is able to stand up to 6 hours, walk up to 6 hours and sit for up to six hours in an 8-hour workday. Indeed, had the Commissioner made a finding that plaintiff is unable to work a full workday, the Commissioner would have granted plaintiff's applications rather than denying them on reconsideration.

2

factors and a general medical condition, and an adjustment disorder with depressed mood.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the retained residual functional capacity to perform a full range of light work activity on a sustained basis. Light work includes the ability to stand, walk and sit for at least six hours in an eight-hour period with regular break opportunities, and to lift 20 pounds occasionally and ten pounds frequently. (Social Security Ruling 83-10). From a nonexertional standpoint, she is limited to the performance of unskilled work activity.

8. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

/////

/////

      11.   In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

      12.   The claimant has the residual functional capacity to perform a full range of light work on a sustained basis (20 CFR § 404.1567, 416.967).

      13.   Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.

      14.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 22-23.)[2] The Appeals Council declined review of the ALJ's decision on November 21, 2003. (Tr. at 6-8.) Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on January 16, 2004.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v.

---

[2] In light of the clear language in Findings 7 and 12, as well as the discussion in the ALJ's written decision (Tr. at 21) finding that plaintiff retains the capacity to perform a full range of light work on a sustained basis, the court agrees with defendant that the reference in Finding 13 to an inability to perform the full range of light work was an inadvertent error on the part of the ALJ and should be disregarded.

4

Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

5

>Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
>Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
>Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
>Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
>Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances five arguments in her motion for summary judgment.  First, plaintiff asserts that the ALJ erred in his treatment of the opinion of John Verzosa, M.D., plaintiff's treating physician.  In a related argument, plaintiff next asserts that the ALJ erred in discounting the opinion of Katharine Severson, R.N., M.S., C.F.N.P., plaintiff's treating family nurse practitioner.  Third, plaintiff maintains that the ALJ erred in discounting the

6

1 testimony of plaintiff and her mother regarding the severity of
2 plaintiff's symptoms and the resulting limitations those symptoms
3 place upon her.  Fourth, plaintiff contends that the ALJ failed to
4 give adequate consideration to the side effects of her medications.
5 Fifth, plaintiff argues that the ALJ erred in his reliance on the
6 Medical-Vocational Guidelines (the "grids") in determining whether
7 she is capable of performing any other work that exists in the
8 national economy.  The court addresses each of plaintiff's arguments
9 below.

10 Beginning with plaintiff's arguments regarding the opinions
11 of Dr. Verzosa and Nurse Severson, it is well-established that the
12 medical opinion of a treating physician is entitled to special
13 weight.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey
14 v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).  "As a general rule,
15 more weight should be given to the opinion of a treating source than
16 to the opinion of doctors who do not treat the claimant." Lester, 81
17 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.
18 1987)).  "At least where the treating doctor's opinion is not
19 contradicted by another doctor, it may be rejected only for 'clear
20 and convincing' reasons." Id. (citing Baxter v. Sullivan, 923 F.2d
21 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion
22 is contradicted by another doctor, the Commissioner may not reject
23 this opinion without providing 'specific and legitimate reasons'
24 supported by substantial evidence in the record for so doing." Id.
25 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).
26 /////

Here, Dr. Verzosa and Nurse Severson[3] submitted a fibromyalgia residual functional capacity questionnaire and letter, respectively, essentially indicating that plaintiff is unable to work due to her fibromyalgia and the resulting pain. (Tr. at 265-66, 316-21.) However, the court finds that the ALJ adequately distinguished the opinions set forth in those documents. For example, the ALJ stated that the opinions of Dr. Verzosa and Nurse Severson were not supported by plaintiff's treatment notes from Shingle Springs Rancheria, the facility where plaintiff received treatment from Dr. Verzosa and Nurse Severson. Those treatment notes, covering the period December 11, 2000 through August 2, 2002, reflect generally unremarkable findings and simply do not indicate that plaintiff is so functionally limited as to be precluded from all work activity.[4] (Tr. at 214-84.)

/////

---

[3] The court will assume that Nurse Severson was part of an "interdisciplinary team" that was "working in conjunction with a physician" as is required in order for her to rise to the level of an acceptable medical source. See Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996). However, the court notes that there is scant evidence in the record suggesting that Dr. Verzosa and Nurse Severson worked within a relationship similar to the extensive one that existed between the physician and nurse practitioner in the Gomez case. See id at 971.

[4] For instance, those treatment notes indicate that: plaintiff's thumb was painful when not wearing a brace (Tr at 215); her pain is stable though worse in hot weather (Tr. at 218); she felt great for three days while camping but fell and is in pain again (Tr. at 220); she reports feeling sleepy and tired (Tr. at 244), she has pain from the hips to the lower legs that is worse in the morning and better in the afternoon which appears related to stressors and cold (Tr. at 257). Many of these notes are accompanied by notes reflecting unhappiness or stressors in plaintiff's family life coupled along with plaintiff's requests for medication.

1 In his opinion, the ALJ also accurately explained that other medical evidence in the record, such as the opinions of the nonexamining state agency physicians and examining physician Rajiv S. Pathak, M.D., indicate that plaintiff is capable of the physical demands of work. (Tr. at 195-99, 304-15.) Indeed, taken alone the opinion of Dr. Pathak, who independently examined plaintiff, is substantial evidence supporting the ALJ's decision. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence[.]").

For these reasons, the court finds that the ALJ properly distinguished the opinion of Dr. Verzosa and Nurse Severson based on specific and legitimate reasons supported by substantial evidence in the record.

Turning to plaintiff's credibility argument, it is well-established that the determination of credibility is a function of the ALJ, acting on behalf of the Commissioner. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985). Thus, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. Morgan, 169 F.3d at 599. In evaluating a claimant's subjective testimony regarding pain and the severity of his or her symptoms an ALJ may consider the presence or absence of supporting

9

1  objective medical evidence along with other factors.  See Bunnell v.
2  Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen v.
3  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Ordinary techniques of
4  credibility evaluation may be employed, and the adjudicator may take
5  into account prior inconsistent statements or a lack of candor by the
6  witness.  See Fair, 885 F.2d at 604 n.5.

7  　　　　　Nonetheless, an ALJ's rejection of a claimant's testimony
8  must be supported by specific findings.  Morgan, 169 F.3d at 599;
9  Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller,
10 770 F.2d at 848).  Once a claimant has presented evidence of an
11 underlying impairment, the ALJ may not discredit the claimant's
12 testimony as to the severity of his or her symptoms merely because
13 the testimony is unsupported by objective medical evidence.  Reddick
14 v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Chater, 119
15 F.3d 789, 792 (9th Cir. 1997).  Rather, "the ALJ can reject the
16 claimant's testimony about the severity of [his or] her symptoms only
17 by offering specific, clear and convincing reasons for doing so."
18 Light, 119 F.3d at 792.  See also Reddick, 157 F.3d at 722.

19 　　　　　Here, plaintiff's medical records document conditions which
20 might reasonably be expected to cause the symptoms alleged by
21 plaintiff.  However, while plaintiff alleges that she is totally
22 unable to work due to the severity of her symptoms stemming from
23 these conditions, the ALJ made specific and detailed findings in not
24 fully crediting plaintiff's testimony in this regard.  For example,
25 the ALJ found plaintiff less than credible due to the findings of Dr.
26 Pathak and the nonexamining state agency physicians who found

plaintiff capable of performing light work (Tr. at 195-99, 304-15) as well as the opinions of examining psychiatrist Peter J. Vander Veer, M.D. and the nonexamining state agency physicians both of whom evaluated plaintiff's mental residual functional capacity (Tr. at 200-09, 285-303).

The ALJ also accurately observed that plaintiff is able to engage in several activities, including some cooking, shopping, laundry, social activities, tutoring of her daughter and camping.[5] (Tr. at 20.)  The court recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." See Reddick, 157 F.3d at 722.  However, the extent of plaintiff's daily activities, particularly when considered in combination with the other evidence cited above, is probative of her ability to perform work.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

With respect to plaintiff's physical complaints, the ALJ noted that plaintiff has received conservative care from her treating physician.  Plaintiff's records reflect pain management through the use of medications only.  Plaintiff has not been referred to a physical therapist, rheumatology clinic, pain management clinic or similar facility that might be appropriate for a person with the debilitating symptoms alleged by plaintiff.  See Johnson v. Shalala,

---

[5] Admittedly, the ALJ overstated the extent of some of plaintiff's activities. For example, plaintiff is not able to engage in household chores without limitation. Plaintiff has indicated that she needs her daughter's assistance in lifting loads of laundry and using the vacuum cleaner which plaintiff states is heavy. (Tr. at 128.)

11

60 F.3d 1428, 1434 (9th Cir. 1995)(considering claimant's conservative treatment as inconsistent with the debilitating condition claimed in upholding denial of benefits); Fair, 885 F.2d at 604 (same).

The ALJ also accurately observed that plaintiff has received conservative care with respect to her alleged mental limitations.  See Johnson, 60 F.3d at 1434; Fair, 885 F.2d at 604.  The court recognizes that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)(quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).  However, plaintiff's treatment notes indicate that Dr. Verzosa assessed plaintiff with "depression" and prescribed her Wellbutrin[6] in light of that assessment.  (See, e.g., Tr. at 231, 241, 257.)  It is reasonable to infer that if plaintiff's mental impairments were so severe as to be debilitating, Dr. Verzosa would have conducted a more formal mental status assessment or referred plaintiff for more aggressive treatment, such as psychotherapy and/or further medication management by a psychiatrist.[7]

---

[6] "Wellbutrin is indicated for the treatment of depression." Physicians' Desk Reference 1121 (52d ed. 1998).

[7] At the administrative hearing plaintiff testified that she goes to child and parent counseling with her daughter, who plaintiff described at the hearing as "borderline retarded" with "severe disabilities in school" and "a social anxiety disorder."  (Tr. at 35, 46-48.)  However, plaintiff conceded that she has not sought counseling for her own condition at any time during the years 2000 through 2002.  Also, there are no records in the administrative record from the facility ("New Morning") where plaintiff and her daughter attend counseling.

12

1         Finally, it is worth noting that the ALJ did not totally
2    reject plaintiff's subjective complaints.  In this regard, the ALJ
3    found plaintiff to be limited to light, unskilled work and thus
4    obviously credited her complaints to an extent.
5         For these reasons the court finds that the ALJ fairly
6    characterized the record and sufficiently stated specific, clear and
7    convincing reasons for not fully crediting plaintiff's testimony
8    regarding the severity of her symptoms.  See Tidwell v. Apfel, 161
9    F.3d 599, 602 (9th Cir. 1998).  Plaintiff's argument to the contrary
10   must be rejected.
11        In her motion plaintiff also contests the ALJ's treatment
12   of the testimony of her mother.  (Tr. at 48-57.)  That testimony
13   supports plaintiff's position regarding the extent of her
14   limitations.  However, in accurately assessing the medical evidence
15   as a whole, especially the content of plaintiff's treatment notes,
16   and noting plaintiff's conservative care, the court finds that the
17   ALJ also provided specific reasons for disregarding that testimony.
18   See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)("In all, the
19   ALJ at least noted arguably germane reasons for dismissing the family
20   members' testimony, even if he did not clearly link his determination
21   to those reasons.").
22        Plaintiff's next argument is that the ALJ failed to give
23   adequate consideration to the side effects of plaintiff's
24   medications.  However, this argument is premised on plaintiff's
25   testimony that her medications make her "real tired and real groggy"
26   (Tr. at 38) and similar indications by Dr. Verzosa and Nurse Severson

(Tr. at 265, 318).  Having determined that the ALJ did not err in his treatment of plaintiff's testimony and the opinions from her treating sources, the court concludes that plaintiff's argument regarding consideration of the side effects from her medications must necessarily fail.  Further, other than plaintiff's brief testimony and Dr. Verzosa and Nurse Severson's terse indications that plaintiff suffers such side effects (Tr. at 38, 265, 318) there is no evidence in the record demonstrating that those side effects significantly impact plaintiff's ability to engage in work activities.

Finally, plaintiff argues that the ALJ should have heard testimony from a vocational expert due to plaintiff's alleged nonexertional impairments.  At the fifth and final step of the sequential evaluation process, the Commissioner can satisfy the burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by either (1) applying the Medical-Vocational Guidelines (the "grids") in appropriate circumstances or (2) taking the testimony of a vocational expert ("VE").  See Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988); Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)).

The grids are designed to show available work in the national economy for individuals with exertional (i.e., strength) limitations, as impacted by the factors of age, education, and work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) & (e). They may be utilized as long as they "accurately and completely

describe the claimant's abilities and limitations." Burkhart, 856 F.2d at 1340 (citing Jones, 760 F.2d at 998).  See also Reddick, 157 F.3d at 729; 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00(b). However, when a claimant's nonexertional limitations are sufficiently severe to significantly limit the range of work permitted by exertional limitations, the grids are inapplicable.  See Burkhart, 856 F.2d at 1340; Desrosiers, 846 F.2d at 577; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).

In arguing that the ALJ erred in relying on the grids, plaintiff asserts that the ALJ should have heard from a vocational expert due to her numerous nonexertional limitations reflected in the letter and questionnaires completed by Nurse Severson and Dr. Verzosa, respectively, and to which plaintiff and her mother testified.  However, as explained above, the ALJ did not err in his assessment of that evidence.  Further, substantial evidence in the form of the examining physicians' opinions; the nonexamining physicians' opinions; and plaintiff's unremarkable treatment notes supports the finding that plaintiff is capable of unskilled, light work.  Of course, light work is a work category covered by the grids. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00 Table No. 2. Therefore, testimony from a vocational expert was not necessary under the circumstances.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

/////

1          2.   Defendant's cross-motion for summary judgment is
2    granted; and
3          3.   The decision of the Commissioner of Social Security is
4    affirmed.
5    DATED: September 29, 2005.

```
                              _____
                              DALE A. DROZD
                              UNITED STATES MAGISTRATE JUDGE
```

DAD:th
Ddad1\orders.socsec\finck0116.order

16